IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

KIRK MACKEY,                                    )
                                               )
                           Plaintiff,          )
                                               )  CIVIL ACTION
vs.                                            )
                                               )  Case No. 4:26-CV-05947
CHOE CHONG CHUL and                            )
BAR SPORTS, LLC,                               )
                                               )
                           Defendants.         )

## COMPLAINT

COMES NOW, KIRK MACKEY, by and through the undersigned counsel, and files this,

his Complaint against Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, pursuant to

the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA") and the ADA's

Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").  In support thereof, Plaintiff respectfully

shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331

and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 et seq., based upon Defendants'

CHOE CHONG CHUL and BAR SPORTS, LLC, failure to remove physical barriers to access

and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff KIRK MACKEY (hereinafter "Plaintiff") is and has been at all times

relevant to the instant matter, a natural person residing in CITY, Texas (COUNTY County).

3.      Plaintiff is disabled as defined by the ADA.

1

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, CHOE CHONG CHUL (hereinafter "CHOE CHONG CHUL"), is an individual who owns property in the State of Texas and within this judicial district.

8.      Defendant, CHOE CHONG CHUL, is an individual and may be served at 14007 Queensbury Lane, Houston, TX  77079-3226.

9.      Defendant, BAR SPORTS, LLC (hereinafter "BAR SPORTS, LLC"), is a domestic limited liability company that transacts business in the State of Texas and within this judicial district.

10.     Defendant, BAR SPORTS, LLC, may be properly served with process via its Registered Agent, to wit: c/o Victor Oni, Registered Agent, 8735 Keegans Forest Lane, Houston,

TX 77031.

## FACTUAL ALLEGATIONS

11.    On or about April 1, 2026, Plaintiff was a customer at "Bar Sports," a business located at 14440 Hempstead Rd., Houston, TX 77040, referenced herein as "Bar Sports". Attached is a receipt documenting Plaintiff's purchase. See Exhibit 1. Also attached is a photograph documenting Plaintiff's visit to the Property. See Exhibit 2.

12.    Defendant, CHOE CHONG CHUL, is the owner of the real property and improvements that Bar Sports is situated upon and that is the subject of this action, referenced herein as the "Property."

13.    Defendant, BAR SPORTS, LLC, is the lessee or operator of the real property and improvements that are the subject of this action.

14.    Defendant, CHOE CHONG CHUL, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, CHOE CHONG CHUL, and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. See 28 CFR § 36.201(b).

15.    Plaintiff's access to the Bar Sports, located at 14440 Hempstead Rd., Houston, TX 77040, Harris County Property Appraiser's property identification number 0451630000020 and 0451630000101 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless

3

and until Defendants are compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

16.     Plaintiff lives 3 miles from the Property.

17.     Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

18.     Plaintiff has visited the Property once before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property within six months, likely sooner, after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer of Bar Sports, to determine if and when the Property is made accessible and for Advocacy Purposes.

19.     Plaintiff intends on revisiting the Property to purchase food, drink and/or services as a return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access, as such, Plaintiff is deterred from returning to the Property as a customer until after the barriers to access identified in this Complaint are cured.

20.     Plaintiff travelled to the Property as a customer once before as a customer, personally encountered the barriers to access at the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

21.     Although Plaintiff may not have personally encountered each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to

4

filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

22.    Plaintiff's inability to fully access the Property in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

23.    On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

24.    Congress found, among other things, that:

(i)    some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iii)   individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)   the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

25.   Congress explicitly stated that the purpose of the ADA was to:

(i)   provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)   provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)   invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

26.   The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

27.   The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

28.   The Property is a public accommodation and service establishment.

29. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

30. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

31. The Property must be, but is not, in compliance with the ADA and ADAAG.

32. Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

33. Plaintiff intends to visit the Property as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

34. Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, have discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal

7

enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

35.    Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

36.    A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS**

(i)    At the far north end of the Property, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(ii)    At the far north end of the Property, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

(iii)    At the far north end of the Property, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

(iv)    At the far north end of the Property, the accessible parking space is not level due to the presence of accessible ramp side flares in the accessible parking space in violation of Sections 502.4 and 406.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the van may rest upon the ramp and create an unlevel surface for Plaintiff to exit and enter their vehicle.

(v)    At the far north end of the Property, the accessible parking space and associated access aisle have vertical rises in excess of ¼ inch and is in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as well as make it difficult for Plaintiff to travel to the public accommodations offered at the Property.

(vi)    At the far north end of the Property, due to a failure to enact a policy of proper parking lot maintenance, there is a buildup of dirt and debris in the accessible parking space and associated access aisle. As a result, they have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4,

9

302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

(vii)   The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards.  There are 150 total parking spaces at the Property which require a minimum of five accessible parking spaces. This barrier to access would make it difficult for Plaintiff to locate an available accessible parking space as such a small number of accessible parking spaces in a large parking lot increases the likelihood of there not being an available accessible parking space.

(viii)   In front of Glamour Girls, due to a failure to enact a policy of proper parking lot maintenance, there is a large gouge of about 3-inches deep in the northernmost of the two accessible parking spaces. As a result, the ground surfaces of the accessible space have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

(ix)   In front of Glamour Girls, the access aisle serving the two accessible parking spaces is obstructed by permanent planter boxes and structural awning support columns that intrude into the required clear access aisle width, in violation of Section 502.4 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

(x)     In front of Glamour Girls, the access aisle serving the two accessible parking spaces is obstructed by permanent planter boxes and structural awning support columns, and when a vehicle is parked in the accessible parking space and there are cars parked on one side of the accessible parking spaces, there lacks adequate space for Plaintiff to enter and exit their vehicle, due to the location of the permanent planter boxes. Moreover, where the access aisle meets the accessible route, there is a vertical rise of approximately 2-inches. As a result, the Property lacks an accessible route from these accessible parking spaces to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

(xi)    In front of Glamour Girls, where the access aisle meets the accessible route, there is a vertical rise of approximately 2-inches and is in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as well as make it difficult for Plaintiff to travel to the public accommodations offered at the Property as the vertical rise could cause the tire of the wheelchair to get snagged or impede movement.

(xii)   In front of Glamour Girls, the access aisle has a running slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while traversing the access aisle.

11

(xiii)    Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**BAR SPORTS BARRIERS**

(xiv)    Bar Sports has erected metal barriers in the parking lot directly in front of its unit and uses that area as an exterior seating area containing tables and chairs and used by their patrons as a unique exterior seating area.  Due to the four inch drop off curb from the main exterior accessible route and due to the fact the only other opening to enter the enclosed exterior seating area is from the vehicular way of the parking lot which is inaccessible to Plaintiff and other's in a wheelchair, the exterior eating/drinking area for Bar Sports is not on an accessible route and is in violation of section 206.2.4 of the 2010 ADAAG Standards.

**BAR SPORTS RESTROOMS**

(xv)    The restrooms have grab bars adjacent to the commode which are not in compliance with Section 604.5 of the 2010 ADAAG standards as the rear bar is missing. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

(xvi)    The clear floor space of the toilet is blocked by a policy of placing a trash can in the clear floor space in violation of Section 606.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(xvii)   The door hardware providing access to the restrooms requires tight grasping and twisting of the wrist in violation of Section 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

(xviii)   The height of the bottom edge of the reflective surface of the mirror in the bathroom is above the 40-inch maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to properly utilize the mirror in the restroom since Plaintiff is sitting in a wheelchair and is lower than a person standing up.

(xix)   The lavatories and/or sinks in the restrooms have exposed pipes and surfaces and are not insulated or configured to protect against contact in violation of Section 606.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the sink as the pipes underneath the sink typically have sharp surfaces and/or hot pipes, and since individuals in wheelchairs use a sink while seated, their legs are particularly vulnerable to these threats.

(xx)   Due to a policy of keeping the trash receptacle under the sink, the restrooms have a sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom sink as Plaintiff is seated in a wheelchair and, when seated, Plaintiff's feet and legs protrude out in front.  In order to properly utilize a sink, Plaintiff's legs must be

13

able to be underneath the surface of the sink, but due to the improper configuration of the sink, there is no room underneath for Plaintiff's legs and feet.

(xxi) The actionable mechanism of the paper towel dispenser in the restroom is located outside the maximum prescribed vertical reach range of 48 inches above the finished floor as set forth in Section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the actionable mechanism of the paper towel dispenser as individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

37. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

38. The Property was originally built in 1962, but according to the Harris County Property Appraiser, significant work was performed on the Property in 2007. As such, the proper standard by which to adjudicate the removal of barriers to access should be either the 2010 ADAAG standards or the 1991 Standards, but not the readily achievable standard.

39. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

40. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

41. All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA as the modifications necessary to cure the barriers to

14

access identified in paragraph 36 of this Complaint are listed in 28 C.F.R. § 36.304 as "readily achievable".

42.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

43.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, have the financial resources to make the necessary modifications.  According to the Property Appraiser, the Appraised value of the Property is $1,315,338.00.

44.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

45.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

46.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

47.     Plaintiff's requested relief serves the public interest.

48.    The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC.

49.    Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

50.    Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)    That the Court find Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, in violation of the ADA and ADAAG;

(b)    That the Court issue a permanent injunction enjoining Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, from continuing their discriminatory practices;

(c)    That the Court issue an Order requiring Defendants, CHOE CHONG CHUL and BAR SPORTS, LLC, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)    That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: July 24, 2026.

Respectfully submitted,


THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

17